**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| DOUGLAS BRUSS, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>TTI OUTDOOR POWER EQUIPMENT, INC.; including other affiliated entities and individuals,<br><br>       Defendant. | Case No. 26-cv-1484<br><br>Judge Joan B. Gottschall |

**DEFENDANT TTI OUTDOOR POWER EQUIPMENT, INC'S
MOTION TO TRANSFER**

Defendant TTI Outdoor Power Equipment, Inc. ("TTI"), respectfully moves to transfer venue to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) and the first-to-file rule. This putative class action substantially duplicates four earlier-filed cases stemming from the same alleged conduct and product recall that are now consolidated in the Central District of California. *In re Ryobi Power Washer Litigation*, No. 5:25-cv-02280 (C.D. Cal. Mar. 3, 2026) ("the "Consolidated Action"). Indeed, plaintiff's causes of action are subsumed by those asserted in the Consolidated Action. Section 1404(a) and the first-to-file rule are intended to prevent exactly this scenario. Allowing parallel actions would waste judicial resources, risk inconsistent rulings, and undermine the efficiencies of consolidation. Because the Central District of California is already presiding over consolidated litigation addressing the same operative facts and claims, this later-filed suit should be transferred.[1] In the alternative, TTI

---

[1] This motion does not seek Rule 12 relief, nor is it a Rule 7 answer to Plaintiff Douglas Bruss's complaint. Defendant expressly reserves the right to file a Rule 12 motion after transfer, and

1

requests that this Court dismiss or stay this action pursuant to the first-to-file rule due to the pending substantially similar action in the Central District of California.

## I. RELEVANT BACKGROUND

On August 28, 2025, TTI, in coordination with the U.S. Consumer Product Safety Commission ("CPSC"), issued a voluntary recall of three models of its Ryobi-branded pressure washers which had a rare risk of the capacitor overheating and bursting (the "Products"). Within days, the first multi-state class action lawsuit was filed against TTI. By the end of 2025, TTI was facing four competing multi-state and/or nationwide class actions across the country arising from the same alleged defect and voluntary recall. These cases were transferred to the Central District of California by stipulation and consolidated in January 2026. Douglas Bruss ("Bruss"), whose claims overlap completely with those in the consolidated class action, sued here in mid-February 2026—more than five months after the first case was filed.

### A. The 2025 Cases Consolidated in the Central District of California

On September 2, 2025, Ken Angelini sued TTI in the Central District of California, alleging causes of action relating to two of the recalled Products, the recall, and its remedy.[2] Exhibit A, at 2-3. Mr. Angelini asserted a combination of multi-state and California putative class consumer

---

reserves all rights to answer and raise defenses to Bruss's complaint at an appropriate time consistent with any orders of this or another court.

[2] The complaint from *Angelini v. TTI Outdoor Power Equip., Inc.*, No. 5:25-cv-02280 (C.D. Cal. Sep. 2, 2025), ECF No. 1, is attached as Exhibit A. TTI requests that the Court take judicial notice of the *Angelini* case, and the date of its complaint. *See, e.g.*, *Ennenga v. Starns,* 677 F.3d 766, 773–74 (7th Cir. 2012) (finding that public court documents were judicially noticeable for the fact of their existence and timing); *Davis v. Suntrust Farms, LLC*, No. 25 CV 1372, 2026 WL 637044, at *2 n.5 (N.D. Ill. Mar. 6, 2026) (taking judicial notice of complaints in "near-identical lawsuits" to establish the fact and timing of such litigation).

protection and warranty claims, including a consumer protection claim under Illinois law on behalf of a putative class of Illinois citizens. *Id.* at 7-10.

On October 13, 2025, plaintiff Lauren Morgan brought additional claims relating to the Products and recall on behalf of a putative nationwide class and a California subclass in the Central District of California.[3] Exhibit B, at 1. Plaintiff Morgan asserted warranty, negligence, unjust enrichment, and unfair competition claims. *Id.* at 8-9, 11-18.

A day later, on October 14, 2025, plaintiff Keith Custer challenged the Products and the recall in the District of Massachusetts.[4] Exhibit C, at 1, 25-26. Mr. Custer, like Bruss here, alleges both nationwide and Illinois classes, and sued under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). *Id.* at 25-26, 26 n.21.

On November 6, 2025, plaintiff Daryl Hicks, an Illinois resident, filed claims regarding the Products and recall in the District of South Carolina, including, like Bruss, a claim for unjust enrichment on behalf of a nationwide class.[5] Exhibit D, at 2, 7.

Both Custer and Hicks thereafter stipulated to the transfer of their respective actions to the Central District of California. On January 26, 2026, these four cases were consolidated before Judge Michael W. Fitzgerald in the Central District of California under a finding that "[e]ach action

---

[3] The complaint from *Morgan v. Techtronic Indus. Co. Ltd.*, No. 8:25-cv-02307 (C.D. Cal. Oct. 13, 2025), ECF No. 1, is attached as Exhibit B. TTI requests that the Court take judicial notice of the *Morgan* case, and the date of its complaint. *See, e.g.*, *Ennenga*, 677 F.3d at 773–74; *Davis*, 2026 WL 637044, at *2 n.5.

[4] The complaint from *Custer v. TTI Outdoor Power Equip., Inc.*, No. 1:25-cv-13002 (D. Mass. Oct. 14, 2025), ECF No. 1, is attached as Exhibit C. TTI requests that the Court take judicial notice of the *Custer* case, and the date of its complaint. *See, e.g.*, *Ennenga*, 677 F.3d at 773–74; *Davis*, 2026 WL 637044, at *2 n.5.

[5] The complaint from *Hicks v. TTI Outdoor Power Equip., Inc.*, No. 2:25-cv-13308 (D.S.C. Nov. 11, 2025), ECF No. 1, is attached as Exhibit D. TTI requests that the Court take judicial notice of the *Hicks* case, and the date of its complaint. *See, e.g.*, *Ennenga*, 677 F.3d at 773–74; *Davis*, 2026 WL 637044, at *2 n.5.

involves substantially similar allegations, claims, and putative classes." *In re Ryobi Power Washer Litigation*, No. 5:25-cv-02280 (C.D. Cal. Jan. 26, 2026), ECF No. 16. The court appointed interim class counsel on February 10, 2026, and the four plaintiffs filed a Consolidated Complaint on March 3, 2026.[6] *Id.* at ECF No. 18; Exhibit E. The Consolidated Complaint asserts thirteen tort, consumer protection, product liability, and contract/quasi-contract claims on behalf of nationwide, multi-state, and state-wide classes (including Illinois classes). Exhibit E, at 29-31. TTI has since filed a motion to dismiss the Consolidated Complaint under Rules 12(b)(1) and 12(b)(6), and briefing is underway. *In re Ryobi Power Washer Litigation*, No. 5:25-cv-02280, ECF No. 29.

**B. This Case**

Bruss filed the instant case in the Northern District of Illinois on February 9, 2026. His complaint also challenges the Products along with the sufficiency of TTI's recall and offered remedy. Bruss alleged ICFA, negligence, and unjust enrichment claims on behalf of a nationwide and/or Illinois class. Compl., Dkt. 1, at 1-3, 10, 12-16.

Not only are Bruss's claims fully encompassed in the Consolidated Action, *see* Exhibit E, at 41-49, 75-79 (alleging nationwide unjust enrichment and negligence claims, and ICFA claims on behalf of Illinois residents), but his allegations closely track the prior-filed cases on a paragraph-by-paragraph level. For example, the beginning of Bruss's complaint mirrors Ms. Morgan's complaint filed months before:

| Paragraph # | **Bruss Complaint** | **Morgan Complaint** |
| --- | --- | --- |
| 1 | This class action seeks damages and equitable relief arising from TTI Outdoor Power Equipment, Inc.'s | This class action seeks damages and equitable relief arising from Techtronic Industries Company Limited's ("TTI") |

---

[6] The Consolidated Complaint from *In re Ryobi Power Washer Litigation*, No. 5:25-cv-02280 (C.D. Cal. Mar. 3, 2026), ECF No. 25, is attached as Exhibit E. TTI requests that the Court take judicial notice of the *In re Ryobi Power Washer Litigation* case, and the date of its complaint. *See, e.g.*, *Ennenga*, 677 F.3d at 773–74; *Davis*, 2026 WL 637044, at *2 n.5.

| | | |
|---|---|---|
| | ("TTIOPE" or "Defendant") false and misleading representations regarding the safety of its Electric Pressure Washers, including their RY142300 - Electric 2300 PSI Pressure Washer and RY142711VNM - Electric 2700 PSI Pressure Washer (collectively, "Products"). | and TTI Outdoor Power Equipment, Inc.'s ("TTIOPE") (collectively "Defendants") false and misleading representations regarding the safety of their Electric Pressure Washers, including their RY142300 - Electric 2300 PSI Pressure Washer and RY142711VNM - Electric 2700 PSI Pressure Washer (collectively, "Products") |
| 2 | TTIOPE manufactures, markets, and distributes consumer power tools and outdoor products under the Ryobi brand name. | TTI manufactures, markets, and distributes consumer power tools and outdoor products under the Ryobi brand name. TTIOPE is a subsidiary of TTI. |
| 3 | Accordingly, Defendants are responsible for the design, manufacture, marketing, and sale of the Products at issue. | Accordingly, Defendants are responsible for the design, manufacture, marketing, and sale of the Products at issue. |
| 4 | On its website, TTIOPE and its affiliated companies present Defendant as a reliable and trustworthy business to consumers, naming "Exceeding Customer Expectations" and "Doing the Right Thing" as one of its core values. On the Ryobi website, the Products are advertised as a durable and easy to use. | On its website, TTI presents itself as a reliable and trustworthy business to consumers, naming "Exceeding Customer Expectations" and "Doing the Right Thing" as one of its core values. On the Ryobi website, the Products are advertised as a durable and easy to use. |
| 5 | Defendant represented that the Products were safe and reliable, despite being aware that design and manufacturing defects rendered them hazardous. | Defendants represented that the Products were safe and reliable, despite being aware that design and manufacturing defects rendered them hazardous. |
| 6 | As a direct result of these misrepresentations, Plaintiff and Class Members purchased defective Products that failed to perform as advertised and posed a substantial risk of serious injury. | As a direct result of these misrepresentations, Plaintiff and Class Members purchased defective Products that failed to perform as advertised and posed a substantial risk of serious injury. |
| 7 | Indeed, the Products contain an identical dangerous defect. Specifically, the Products' capacitor can overheat and burst, causing parts to be forcefully ejected, posing a risk of serious injury from impact to the user or bystanders (the "Defect"). | Indeed, the Products contain an identical dangerous defect. Specifically, the Products' capacitor can overheat and burst, causing parts to be forcefully ejected, posing a risk of serious injury from impact to the user or bystanders (the "Defect"). |

Dkt. 1 at 1-2 (footnotes omitted); Exhibit B, at 1-2. Counsel for Bruss, clearly long familiar with the earlier-filed actions, has declined to stipulate to transfer.

## II. ARGUMENT

A court may transfer the venue of a case to another district "[f]or the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a); *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707 (7th Cir. 2020). In assessing if it is appropriate to transfer a case, courts look to whether: "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 734 (N.D. Ill. 2007). Where a party moves to transfer an action because it is duplicative of an earlier filed action, the first-to-file rule also supports transfer pursuant to § 1404(a). *See Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 982 (7th Cir. 2010). Each of these factors favor transfer in this case. In the alternative, the Court should stay or dismiss this case while the consolidated class action remains pending.

### A. Venue is Proper in Both the Northern District of Illinois and Central District of California

Venue is proper in both the Northern District of Illinois and Central District of California, making transfer between the two districts appropriate. Venue is appropriate in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Bruss is a resident of Illinois and asserts claims on behalf of an Illinois class such that a substantial part of the events giving rise to his claim can be said to have occurred in Illinois. *See* Compl. at 4-5. Additionally, Bruss asserts nationwide class allegations, including claims arising from conduct that allegedly occurred across multiple jurisdictions. As evidenced by the prior actions filed, transferred to, and consolidated in the Central District of California, a

substantial part of the events giving rise to Bruss's claims can therefore also be said to have occurred in California such that venue is proper there as well.  *See* Exhibit E, at 6.

### B. The Central District of California is the More Convenient Forum

In assessing the most convenient forum for a case, courts look to factors such as: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *E.g., Nalco Co. v. Environmental Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010) (citation omitted).  Under the circumstances present here, where four substantially similar class actions have already been consolidated in a different district, the convenience factors heavily favor the Central District of California as the more convenient forum.

First, "courts greatly discount the weight given to a plaintiff's choice of forum in putative class actions, particularly when a nationwide class is alleged, as it is here." *Kahn v. Target Corp.*, No. 22 C 4178, 2023 WL 2306940, at *2 (N.D. Ill. Mar. 1, 2023).  Bruss seeks to represent a nationwide class, and "if class certification occurred, the named Plaintiffs['] choice of venue will not be the home venue for all plaintiff and any venue selected is bound to be inconvenient to some plaintiffs." *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009).  As a result, this factor favors transfer.

Next, the situs of material events further supports transfer.  Where claims focus on a defendant's product, knowledge regarding its products, or response to a product defect, the situs of material events is the defendant's location, not the location that any plaintiff purchased a product. *See Preston v. Am. Honda Motor Co.*, No. 17 C 3549, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017) (collecting cases).  Here, TTI is a Delaware corporation headquartered in South Carolina, so information that is key for this inquiry is located outside of the Northern District of

7

Illinois, favoring transfer.  Compl. at 5; *see also Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007) (finding that where there was no evidence that the business decisions concerning the manufacture or design of a product at issue occurred in the Northern District of Illinois, the situs of material events factor favored transfer).

The access to sources of proof and convenience of the witnesses factors similarly support transfer.  Because of the ease of transferring evidence with the use of modern technology, courts have put less emphasis on the ease of access to the sources of proof element over time.  *See Kahn*, 2023 WL 2306940, at *3 (explaining that modern technology has rendered "the location of documents and other sources of proof only 'minimally important' to the transfer analysis") (citation omitted); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, No. 09 C 1265, 2009 WL 10700287, at *6 (N.D. Ill. Apr. 27, 2009) (finding that modern technology rendered the location of sources of proof element "less relevant") (Gottschall, J.).  There is no basis to conclude that access to relevant evidence would be easier in Illinois than in California, where putative plaintiffs reside in both forums and TTI resides in neither.  *See, e.g.*, *Chandra V. Pharm. Consultants, LLC v. Bausch Health Ireland Ltd.*, No. 23 C 15958, 2024 WL 4751280, at *3 (N.D. Ill. Nov. 12, 2024) ("Modern technology has made it easy and cheap to transfer [documents] between locations.").

Similarly, courts give little weight to the convenience of party witnesses when assessing the convenience of witnesses factor.  *See id.* (citation omitted).  In this case, there is equal burden on party witnesses between Illinois and California because there are prospective plaintiffs in both locations and TTI's employees will have to travel to either location.  Convenience of third-party witnesses also favors transfer.  If Bruss' suit were transferred to the Central District of California—where the Consolidated Action is already underway—third-party witnesses would only have to

8

appear and/or travel to one venue; proceedings in the two actions would be consolidated post-transfer; and the resulting coordinated discovery would create further convenience and efficiencies.

Lastly, the convenience of the parties weighs in favor of granting transfer. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience." *Orthoflex, Inc. v. Thermotek, Inc.*, No. !10–cv–1875, 2010 WL 5069700, at *4 (N.D. Ill. Dec. 3, 2010). Under the circumstances of this case, where TTI will likely need to produce several employees for deposition or trial relating to alleged defect and recall, and the prospective class members will likely not need to present any employee witnesses, TTI's preference for a venue of its choice holds more weight—particularly given that TTI is already defending the related Consolidated Action in the Central District of California. *See Preston*, 2017 WL 5001447, at *4 (finding that in the class action context, where a defendant would need to put forward employees as witnesses, the convenience of the parties factor favored transfer).

## C. The Interests of Justice Favor Transfer

In assessing the interests of justice, courts look to: "(1) docket congestion and the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the relationship of the community to the controversy; and (4) the desirability of resolving controversies in their locale." *Vernon v. Doe*, No. 21-cv-6463, 2025 WL 2644608, at *2 (N.D. Ill. Sep. 15, 2025) (citing *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961–62 (N.D. Ill. 2000)). The pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and

money that 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990). The interests of justice favor granting TTI's motion to transfer.

First, the docket congestion and speed factor favors transferring this case to the Central District of California. To assess speed and congestion, courts routinely "rely on the Federal Court Management Statistic Reports" to compare the two districts at issue. *Id.* (citation omitted). For the period ending December 31, 2025, the median time from filing to trial in the Northern District of Illinois was 52.5 months, whereas in the Central District of California it was merely 25.5 months. U.S. Courts, Fed. Crt. Mgmt. Stats., U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (December 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison1231.2025.pdf. This factor clearly favors transferring this case to the Central District of California. *See, e.g.*, *Vernon*, 2025 WL 2644608, at *2 (finding that a difference of approximately 11 months in the average time from filing to trial was sufficient for the speedy trial factor to clearly favor transfer); *Schell v. Aldi, Inc.*, No. 21-cv-6654, 2022 WL 900212, at *2 (N.D. Ill. Mar. 28, 2022) (finding that a 28-month difference between two districts' average times from filing to trial was significant).

Next, the court's familiarity with the applicable law also favors transfer because the Central District of California has already invested judicial resources into progressing the Consolidated Action. While the Northern District of Illinois and the Central District of California are both experienced in resolving complex matters and applying law from multiple states, the Consolidated Action has already advanced further than this case. Judge Fitzgerald, in presiding over consolidation and now TTI's motion to dismiss, is already familiar with the Products and the recall, related conduct, and the legal and class claims at the heart of these actions. *See Jaramillo*, 664 F. Supp. 2d at 917 (finding a different district more familiar with applicable law where it had already

10

ruled on a related issue in a duplicative or highly similar action); *Preston*, 2017 WL 5001447, at *9 (finding that the interest of justice favored transfer where the other district court "is vastly more familiar with the facts of this case than is this Court"); *see also Solaia Tech., Inc. v. Rockwell Automation, Inc.*, No. 03 C 566, 2003 WL 22057092, at *3 (N.D. Ill. Sep. 2, 2003) (finding that the interest of justice favored transfer where the action could be consolidated if transferred, to avoid inconsistent results and encourage efficiencies) (Gottschall, J.); *Villalobos v. Cooper Tire & Rubber Co.*, No. 05 C 0391, 2005 WL 8179132, at *2 (N.D. Ill. Oct. 25, 2005) ("Transfer serves the interest of justice by preventing two actions involving the same issues from proceeding simultaneously in different districts.") (citation omitted) (Gottschall, J.).

Lastly, because this case involves nationwide class allegations, no specific state has a greater relationship with the controversy or desirability of resolving the dispute. *See Jaramillo*, 664 F. Supp. 2d at 917 ("[B]ecause the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another.").

**D. The "First-to-File" Rule Favors Transfer**

Federal Courts have "the inherent power to administer their dockets so as to conserve scarce judicial resources," and possess the discretion to deter to another federal proceeding "to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). Because this doctrine preserves the "limited resources of the judiciary" and prevents the "risk of conflicting decisions," courts view themselves as possessing an "obligation" to avoid duplicative litigation. *See, e.g.*, *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008–09 (N.D. Ill. 2009). Accordingly, courts can "dismiss, transfer, or stay a second-filed case when the actions that have been filed in separate federal courts are sufficiently duplicative." *Nicholson v. Nationstar Mtg. LLC,* No. 17-cv-1373, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018); *see also*

11

*McReynolds v. Merril Lynch & Co.*, 694 F.3d 873, 888–89 (7th Cir. 2012) (explaining that district courts possess "significant latitude" on the question of how to treat cases that are "duplicative of a parallel action already pending in another federal court") (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). In evaluating the degree of overlap between actions, courts consider whether the "claims, parties, and available relief do not significantly differ between the two actions." *Serlin*, 3. F.3d at 223 (citation omitted).

The four cases now consolidated in the Central District of California each pre-date Bruss's complaint by months and are substantially similar to it, rendering Bruss' later-filed complaint entirely duplicative. Bruss's complaint invokes the same legal theories as those raised in Consolidated Complaint (as well as the four individual complaints that preceded it), and the same core "gravamen" regarding the alleged capacitor defect in the same Products. *Compare* Compl. at paras. 21-28, 41-50 *with* Exhibit E, at paras. 55-60, 79-86 (containing highly similar factual allegations, including some identical paragraphs). In other words, the cases involve the same core questions, such as whether the Products contained a defect, what and when TTI knew about the defect, and whether TTI omitted material information about the defect. Like the plaintiffs in the Central District of California, Bruss also contests the adequacy of TTI's recall and remedy. *See Nicholson*, 2018 WL 3344408, at *7 (explaining that "there need not be complete congruence of the issues among cases to invoke the first-to-file rule: there only needs to be substantial overlap of the issues").

Further, the first-to-file rule does not require strict identity of parties; "[i]n cases like this, the relevant question is whether the class members would be the same in the two actions, not whether the named plaintiffs are the same." *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014) (citation omitted). More specifically,

Bruss purports to represent nationwide and Illinois classes of individuals who purchased the Products—the very same classes asserted in the Consolidated Action. *Compare* Compl. at 10 (alleging nationwide and Illinois classes), *with* Exhibit A at 8 (alleging a multi-state consumer protection class which included Illinois), *and* Exhibit B at 8 (alleging a nationwide class), *and* Exhibit E at 29-30 (alleging nationwide and Illinois classes). Bruss is a putative class member of the Consolidated Action. And it is undisputed that the named defendant in this case and that in the Consolidated Action are identical.

Additionally, the available relief in the claims is the same because both sets of plaintiffs seek class certification; the designation of a lead plaintiff and class counsel; restitution; disgorgement; actual and statutory damages in an amount of at least $5,000,000; punitive damages; attorneys' fees; and injunctive relief requiring Defendant to engage in a corrective advertising campaign. *See Nicholson*, 2018 WL 3344408, at *7 (finding that cases were duplicative for seeking the same available relief where "both sets of plaintiffs seek class certification, damages, prejudgment interest, and attorneys' fees"); *see also, e.g.*, Compl. at 18; Exhibit E, at 5, 81. In similar circumstances, courts routinely exercise their discretion to dismiss or transfer actions under the first-to-file rule. *See, e.g.*, *Stewart v. Aeropres, Corp.*, No. 23 CV 13207, 2024 WL 4296798, at *2 (N.D. Ill. May 28, 2024) (finding that that the first-to-file rule favored transfer where the theory of liability was the same between two cases); *Tavistock Restaurant Grp., LLC v. Zurich Am. Ins. Co.*, No. 20-cv-04364, 2021 WL 1614519, at *10 (N.D. Ill. Apr. 26, 2021) (finding that the first-to-file rule favored transfer where "considerable resources . . . would be conserved by transfer"). Accordingly, it is appropriate for the Court to apply its discretion in this case to transfer Bruss's claims to the Central District of California.

13

**E.  In the Alternative, a Stay or Dismissal Is Warranted**

If the Court determines that transfer is not the appropriate manner to address the issues Bruss's duplicative, later-filed suit creates, TTI requests that the Court stay Bruss's claims pending the outcome of the Consolidated Action or dismiss Bruss's complaint.  For the reasons described in Section II.D above, Bruss's claims are duplicative of the now-consolidated action in the Central District of California.  In these circumstances, district courts possess "a great deal of latitude and discretion" to determine how to appropriately address the issue of duplicative litigation, whether through dismissal, stay, or transfer.  *See Serlin*, 3 F.3d at 223.

The circumstances here support a stay. Bruss would not be unduly prejudiced and his interests will be advanced in the Central District of California.  A stay would also streamline the litigation by avoiding duplicative efforts on identical legal issues across two courts and may eliminate entirely the need for further proceedings in this case, and conserve the parties' and courts' resources.  *See, e.g.*, *Pfizer Inc.*, 640 F. Supp. 2d at 1007–1011 (describing the three factors for a motion to stay and finding that a stay was appropriate where there was a duplicative, earlier-filed action, as it was necessary to "avoid wasteful duplicative litigation" and prevent the "risk of conflicting decisions"); *Hussein v. Adidas Am., Inc.*, No. 23 C 4989, 2023 WL 8787791, at *2 (N.D. Ill. Dec. 19, 2023) (finding that where there are "twin cases racing toward class certification in separate federal districts at the same time, all three factors counsel in favor of a stay").

Dismissal of Bruss's claims would also be an appropriate exercise of the Court's discretion.  Indeed, dismissal would not negatively impact Bruss, as his interests are fully represented in the Consolidated Action in the Central District of California.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000) (explaining that dismissal is an appropriate remedy for duplicative actions where it is "absolutely clear that

14

dismissal cannot adversely affect any litigant's interests"). In sum, TTI requests, in the alternative to transfer, that the Court stay or dismiss Bruss's claims.

### III. CONCLUSION

Because transfer to the Central District of California avoids duplicative litigation, precludes the risk of conflicting rulings, saves judicial resources, and serves the interests of justice, TTI respectfully requests that the Court grant this motion and transfer this matter to the Central District of California or, in the alternative, dismiss or stay this action while the consolidated class action remains pending.

Dated: April 30, 2026

Respectfully submitted,

/s/ *Amy C. Andrews*
Amy C. Andrews
Lauren E. Jaffe
aandrews@rshc-law.com
ljaffe@rshc-law.com
RILEY SAFER HOLMES AND
CANCILA LLP
1 S. Dearborn St., Ste 2200
Chicago, IL 60603
Telephone: (312) 471-8700

Jeffrey R. Williams (*pro hac forthcoming*)
jwilliams@rshc-law.com
RILEY SAFER HOLMES AND
CANCILA LLP
456 Montgomery Street 16th Floor
San Diego, CA 92130
Telephone: (858) 398-0182
Facsimile: (858) 398-0450

Michelle C. Doolin (*pro hac forthcoming*)
michelle.doolin@sidley.com
SIDLEY AUSTIN LLP
12230 El Camino Real, Suite 300
Los Angeles, CA 90067
Telephone: (310) 595-9473

15

Facsimile: (310) 595-9501

Judith Shophet Sidkoff (*pro hac forthcoming*)
judith.sidkoff@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550

*Attorneys for Defendant*
*TTI Outdoor Power Equipment, Inc.*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2026, I filed this motion through the Court's electronic filing system, which caused a copy of the foregoing document to be served upon all counsel of record.


Dated: April 30, 2026                    */s/ Amy C. Andrews*
                                         Amy C. Andrews